UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD LEE REYNOLDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　Defendant. | Case No. 13-cv-02074-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR ADDITIONAL PROCEEDINGS**<br><br>Re: ECF Nos. 44, 45 |

In this Social Security action, Plaintiff Donald Lee Reynolds appeals a final decision of Defendant Commissioner Carolyn W. Colvin denying his application for disability insurance benefits. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 44, 45. The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5.

Upon consideration of the moving papers, and for the reasons set forth below, Plaintiff's motion for summary judgment is granted in part, Defendant's motion for summary judgment is denied, and the case is remanded for further proceedings.

**I.　BACKGROUND**

　**A.　Factual and Procedural History**

Plaintiff Donald Lee Reynolds claims disability beginning on February 7, 2007. Administrative Record ("AR") 125. Reynolds is a fifty-three-year-old man who was last employed as a truck driver. AR 125, 139. In this job, he delivered water to construction sites and washed down parking lots. AR 153. He left work on September 15, 2009, due to obesity, coronary artery disease, degenerative arthritis of the lower spine, and a heart attack that occurred on February 7, 2007. AR 151, 158.

Reynolds filed his application for disability benefits on February 12, 2010. AR 125. His claim was denied by the Social Security Administration on April 12, 2010, and denied again upon reconsideration on July 27, 2010. AR 64-68, 71-76. An administrative law judge ("ALJ") heard Reynolds' case on June 29, 2011, and issued an unfavorable decision on September 7, 2011. AR 9-21. The Appeals Council of the Social Security Administration denied review of this decision on April 4, 2013. AR 1-4. Reynolds filed this action on May 7, 2013, seeking review of the denial. ECF No. 1.

Reynolds also filed a second application for disability benefits, alleging disability beginning on September 8, 2011. Declaration of Andrew Ragnes in Support of Motion to Remand ("Ragnes Decl."), ECF No. 29, Ex. A. The Social Security Administration granted this application on August 2, 2013, based in part on the medical opinions of treating physician Dr. Wayne Scheidemann. Id. Exs. A-C. Because certain of these opinions were written after the ALJ's hearing but before the determination and were not available to the ALJ, this Court granted Reynolds' motion to remand this case to the Commissioner to determine whether the initial denial required reconsideration in light of Reynolds' successful second application and the relevant opinions of Dr. Scheidemann. ECF No. 36.

The ALJ conducted a second hearing on November 6, 2014, and issued a new, partially favorable decision on December 23, 2014, finding that Reynolds was not disabled prior to November 15, 2009, but became disabled on that date and continued to be disabled through the date of the decision. AR 390-400. The ALJ evaluated Reynolds' claim using the five-step sequential evaluation process for disability required under the Code of Federal Regulations:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If

2

not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Reynolds had not engaged in substantial gainful activity since the alleged onset date, February 7, 2007.  AR 394.  At step two, she determined that since the alleged onset date, Reynolds has had the following severe impairments: coronary artery disease (CAD), status post myocardial infarction (MI); peripheral edema; morbid obesity; degenerative arthritis of the lumbar spine and knees; right rotator cuff tear; and carpal tunnel syndrome (CTS).  AR 394.  At step three, she concluded that he has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and therefore proceeded to step four.  AR 394.  The ALJ then found that:

> [P]rior to November 15, 2009, the date that the claimant became disabled, the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) except that he could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday; occasionally climb, stoop, kneel, crouch, and crawl; frequently balance; occasionally reach overhead with the right upper extremity; and frequently handle and finger bilaterally. . . .
>
> [B]eginning on November 15, 2009, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday; occasionally climb, stoop, kneel, crouch, and crawl; frequently balance; occasionally reach overhead with the right upper extremity; frequently handle and finger bilaterally; and, in addition, he would miss work four times a month due to pain.

AR 395-97.  At step four, she concluded that Reynolds has no past relevant work.  AR 397.  Finally, at step five, she found that "[p]rior to November 15, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed," but "[b]eginning on November 15, 2009, . . . there are no jobs that exist in significant numbers in the national economy that claimant can perform."  AR 398-99.  Based on these findings, the ALJ concluded that Reynolds was not disabled prior to November 15, 2009, but became disabled on

United States District Court
Northern District of California

that date and continued to be disabled through the date of her decision. AR 399.

In reaching these conclusions, the ALJ found that although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible prior to November 15, 2009." AR 396. She based the November 15, 2009 onset date on Dr. Scheidemann's report that the "claimant's conditions had gradually worsened at that time to the point of his inability to work." AR 396. However, the ALJ discredited Dr. Scheidemann's October 2011 statement that Reynolds became disabled in 2007 as inconsistent with contemporaneous treatment records. AR 397. She found Reynolds' testimony consistent with the November 15, 2009 date because, inter alia, "[h]e testified that he did not have any ongoing heart issues after his heart attack in 2007 and that his lower back and hips began to hurt significantly in May 2009." AR 397. In assessing the availability of jobs in the national economy that Reynolds could perform, the ALJ relied on the testimony of vocational expert ("VE") Robert Raschke. AR 398-99, 432.

On March 24, 2015, pursuant to the parties' stipulation, the Court reopened the case. ECF No. 40. Reynolds filed his motion for summary judgment on May 29, 2015. ECF No. 44. The Commissioner filed her opposition and cross-motion for summary judgment on June 26, 2015. ECF No. 45. Reynolds filed a response to the Commissioner's cross-motion for summary judgment on August 16, 2015. ECF No. 48.[1]

### B.     Jurisdiction

The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. section 405(g).

### C.     Legal Standard

The Court may set aside a denial of benefits only if it is "not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084-85 (9th Cir. 2000). "Substantial evidence is relevant evidence which, considering the

---

[1] The response was untimely, see ECF Nos. 47, 48, but the Commissioner has not objected and the Court has considered it.

record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. at 1085. It is "more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The Court "review[s] the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Id. at 1258. The ALJ is responsible for making determinations of credibility, resolution of conflicts in medical testimony, and resolution of all other ambiguities. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## II. DISCUSSION

On appeal, Reynolds challenges the ALJ's finding of a disability onset date of November 15, 2009. ECF No. 44 at 1. Reynolds argues that the Court should grant summary judgment in his favor because: (1) the vocational expert's testimony was in conflict with the Dictionary of Occupational Titles; (2) the ALJ improperly weighed the medical source opinion evidence, including the opinion of treating physician Dr. Scheidemann; (3) the ALJ's residual functional capacity determination was not supported by substantial evidence; and (4) the ALJ erred in finding Reynolds' testimony not credible. Id. at 8-20. The Court considers each argument in turn.

### A. Vocational Expert Testimony

The ALJ's pre-November 15, 2009 RFC determination limited Reynolds to occasionally reaching overhead with the right upper extremity. AR 395. At the hearing, the ALJ asked the VE a complete hypothetical question, which included this limitation, and the VE testified that a person with this RFC could work as a lamp shade assembler (DOT # 739.684-094), a lens-block gauger (DOT # 716.687-030), or a referral and information aide (DOT # 237.367-042). AR 434-35. Reynolds argues that contrary to the VE's statement that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), AR 436, the testimony was actually in conflict with the DOT because each of these jobs requires "frequent" reaching, and "overhead reaching is a specific subset of reaching." ECF No. 44 at 8-10. Because the ALJ did not identify this conflict or solicit an explanation from the VE, Reynolds argues, her decision must be vacated and at least

remanded for rehearing.  Id.; see Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation"); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation").

Reynolds relies primarily on Winder v. Astrue, 12-cv-1048-AGR, 2013 WL 489611 (C.D. Cal. Feb. 6, 2013) and Richardson v. Astrue, 11-cv-1593-SP, 2012 WL 1425130 (C.D. Cal. Apr. 25, 2012).  In Winder, the ALJ's RFC assessment stated that the claimant was limited to occasional overhead reaching, and the VE proposed three jobs that, according to the DOT, require frequent reaching.  2013 WL 489611, at *2.  The court found that because it was not clear whether the DOT's requirements for the jobs at issue include reaching above shoulder level, there was a potential inconsistency between the VE's testimony and the DOT.  Id. at *2.  Under these circumstances, the ALJ was "required to determine whether a conflict exists and, if so, 'whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].'"  Id. at *3 (quoting Massachi v. Astrue, 486 F.3d 1149, 1153 & n.13 (9th Cir. 2007)).  Similarly, in Richardson, the ALJ's RFC precluded the claimant from overhead reaching bilaterally and the ALJ included this restriction in the hypothetical posed to the VE, but the VE identified three jobs that, according to the DOT, require either frequent or occasional reaching.  2012 WL 1425130, at *3. The court concluded that the ALJ erred "both in failing to adequately inquire of the VE as to whether there was a conflict between her testimony and the DOT, and in failing to obtain an explanation for and resolve the VE's deviation from the DOT before the ALJ relied on the VE's testimony in finding plaintiff not disabled." Id. at *6.  See also Riffner v. Colvin, No. 14-cv-327-JC, 2014 WL 3737963, at *4 (C.D. Cal. July 29, 2014) (collecting similar cases).  The Commissioner points to Brister v. Colvin, No. 12-cv-726-JE, 2013 WL 2318842, at *11 (D. Or. May 27, 2013), in which a district court rejected a similar argument that "the reaching requirements of the cashier position exceeded the limitation to occasional overhead reaching set out in the ALJ's RFC . . . because the DOT does

not indicate that this position requires overhead reaching." ECF No. 45 at 3.

The Court concludes that this case differs from Winder, Richardson, and Brister, in that the ALJ's RFC determination did not limit Reynolds to occasional overhead reaching bilaterally. Instead, she concluded that he was limited to occasionally reaching overhead with the right upper extremity. AR 395. The case is therefore similar to Palomares v. Astrue, 887 F. Supp. 2d 906 (N.D. Cal. 2012). In that case, the hypotheticals posed by the ALJ limited the claimant to occasional reaching and overhead reaching on the left side, while the VE's proposed job required constant reaching. Id. at 920. The VE testified that his answers were consistent with the DOT, and considered that the claimant had reaching and lifting limitations on one side only. Id. The Court concluded that "[b]ecause the DOT does not require constant reaching with both arms . . . the VE's testimony relying on this RFC did not conflict with the DOT, and thus the ALJ did not err on this issue." Id.; see also McConnell v. Astrue, No. 08-cv-667-JC, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010) (finding "no actual conflict between plaintiff's abilities and the DOT requirements" where the challenged jobs required "frequent or occasional reaching, handling and/or fingering" and "plaintiff has no significant limitations in the use of his left arm and hand, and thus would be capable of performing such requirements"); Feibusch v. Astrue, 07-cv-244-BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008) ("the use of two arms is not necessarily required for jobs that require reaching and handling"); Valero v. Colvin, No. 13-cv-01815-SKO, 2015 WL 1201874, at *14 (E.D. Cal. Mar. 16, 2015) ("testimony that a claimant who is limited to occasional overhead reaching on the left *and* only frequently handling on the right can nonetheless perform constant reaching and handling generally is the type of deviation that requires explanation and testimony from an expert" (emphasis in original)).

Here, the ALJ posed a complete hypothetical limiting the claimant to occasional reaching overhead with the right upper extremity, and without limitation on reaching with his left arm and hand. AR 433-34. The VE considered these limitations, proposed three possible jobs, and stated that his testimony was consistent with the DOT. AR 433-36. Because the DOT descriptions of the three proposed jobs do not require frequent reaching with both arms, the Court concludes that the VE's testimony was not in conflict with the DOT, and therefore the ALJ did not err on this

issue. See Palomares, 887 F. Supp. 2d at 920.

### B. Weight of Medical Opinion Evidence

Second, Reynolds contends that the ALJ erred because she failed to adequately explain her rejection of the opinion of treating physician Dr. Scheidemann. ECF No. 44 at 11-16. "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (internal quotation marks omitted).

Here, the ALJ credited Dr. Scheidemann's November 15, 2009 report. AR 396 ("The established onset date of November 15, 2009 is based on the report of Dr. Scheidemann that claimant's conditions had gradually worsened at that time to the point of his inability to work."). She disagreed, however, with his statement that Reynolds became disabled in 2007:

> Although Dr. Scheidemann treated claimant prior to the [established onset date], the main treatment during that time was for degenerative joint disease of the right shoulder (Exhibit 14F/2) and mild effusion of the left knee (Exhibit 14F/10), resulting in reduced standing and lifting/carrying (Exhibit 14F/8) because of 20 percent loss of motion of the right shoulder (Exhibit 14F/19). Claimant had only a slight antalgic gait at that time (Exhibit 14F/20). Although Dr. Scheidemann stated that claimant became disabled in 2007 (Exhibit 17F/5), his treating records at that time do not reflect a basis for the opinion that he made in October 2011 (Exhibit 17F/6).

AR 397.

Reynolds argues generally that the ALJ "entirely ignored most of Dr. Scheidemann's treatment records, including his evaluations and opinions from 1/6/2007 to 3/12/2010" and his "2006-2010 submitted medical evidence." ECF No. 44 at 11, 15. However, he identifies only two specific opinions that, in his view, the ALJ erroneously disregarded: the November 15, 2009 report and the onset date reported in an October 26, 2011 questionnaire.

With respect to the November 15, 2009 report, the ALJ correctly reported Dr. Scheidemann's statement that "Mr. Reynolds' conditions have gradually worsened resulting in his inability to achieve gainful employment." AR 306, 396. Although Reynolds describes this report as "retrospective," ECF No. 44 at 12, and argues that it required the ALJ to conclude that Reynolds had been disabled since 2007, the plain language of the report contradicts this assertion.

8

In the report, Dr. Scheidemann states that Reynolds "should be considered fully disabled from employment" based on his worsening conditions, but made no finding that he had been disabled before that date. AR 313. Any ambiguity arising from the discussion of Reynolds' chronic and gradually worsening symptoms was for the ALJ to resolve. Magallanes, 881 F.2d at 750. The ALJ did not discount this opinion.

By contrast, the ALJ did discount Dr. Scheidemann's October 26, 2011 opinion that the appropriate onset date was in 2007. AR 589. The Court concludes that the ALJ adequately explained that the 2007 onset date, reported in 2011, was inconsistent with Dr. Scheidemann's contemporaneous treatment records. AR 397. In 2011, Dr. Scheidemann indicated that "the earliest date from which the [reported] symptom-related limitations have existed at the assessed severity" was 2007. AR 589. But his treatment records and 2009 report suggest gradually worsening symptoms. AR 306. As the ALJ explained, the main treatment before the November 15, 2009 onset date was for degenerative joint disease of the right shoulder and mild effusion of the left knee, rather than the more severe limitations reported later. AR 396-97. The Court concludes that the ALJ adequately explained her decision to reject Dr. Scheidemann's 2011 opinion concerning the onset date.

### C. Credibility Determination

Reynolds also challenges the ALJ's determination that his testimony was "not entirely credible prior to November 15, 2009." AR 396. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting Smolen v. Chater,

9

1   80 F.3d 1273, 1281 (9th Cir. 1996)).[2]  "[G]eneral findings are an insufficient basis to support an

2   adverse credibility determination." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

3   Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and

4   must explain what evidence undermines the testimony." Id.  The ALJ's credibility finding must

5   be properly supported by the record and sufficiently specific to assure a reviewing court that the

6   ALJ did not arbitrarily reject the claimant's subjective testimony regarding pain.  Bunnell, 947

7   F.2d at 345-46.

8         Here, the ALJ found that "the claimant's medically determinable impairments could

9   reasonably be expected to cause the alleged symptoms; however, the claimant's statements

10  concerning the intensity, persistence, and limiting effects of these symptoms are not entirely

11  credible prior to November 15, 2009, for the reasons explained in this decision."[3]  AR 396.  The

12  ALJ then discussed the medical evidence and, in particular, the opinions of Dr. Scheidemann,

13  before turning back to Reynolds' testimony:

14  > Claimant's testimony is also consistent with the [established onset date] of November 15, 2009.  He testified that he did not have any ongoing heart
15  > issues after his heart attack in 2007 and that his lower back and hips began to hurt significantly in May 2009.  Two years after his heart attack, he
16  > began receiving regular pain injections.  His legs began to swell in 2007, but he took pills that took away the swelling unless he stood for too long.
17  > This testimony is consistent with the sedentary RFC assessed herein.

18  AR 397.  The ALJ discussed the statements that supported her determination that Reynolds was

19  disabled beginning on November 15, 2009, but did not "specifically identify the testimony she . . .

20  finds not to be credible" or "explain what evidence undermines the testimony." Holohan, 246

21  F.3d at 1208.  Reynolds acknowledges, and this Court agrees, that "there may be strong grounds

22  upon which the ALJ rejected claimant's evidence in this case." ECF No. 44 at 17.  But where the

23  ALJ states that she finds the claimant's statements to be "not entirely credible," and fails to

24  identify which statements she discredits or on what basis, the ALJ's findings are insufficiently

---

[2] The Commissioner's suggestion that the "clear and convincing" standard does not apply, ECF No. 45 at 6 n.4, "lacks any support in precedent and must be rejected." Garrison, 759 F.3d at 1015 n.18; see also Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).
[3] The Court therefore does not consider the reasoning in the ALJ's prior September 7, 2011 decision.

"specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." Bunnell, 947 F.2d at 345; see also Brown-Hunter v. Colvin, ___ F.3d ___, No. 13-15213, 2015 WL 4620123, at *6 (9th Cir. Aug. 4, 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error.").[4]

The Court therefore grants Reynolds' motion for summary judgment on this issue. On remand, the ALJ must reevaluate the claimant's credibility. If she rejects Reynolds' testimony about the severity of his symptoms, she shall "specifically identify the testimony she . . . finds not to be credible," and provide "specific, clear and convincing reasons" to explain her determination. Holohan, 246 F.3d at 1208; Garrison, 759 F.3d at 1014-15.

### D. Residual Functional Capacity Determination

Reynolds argues that "substantial evidence is lacking" to support the ALJ's pre-November 15, 2009 RFC determination. ECF No. 44 at 16. Where an ALJ does not provide clear and convincing reasons to exclude the claimant's statements regarding his pain and symptoms from her assessment of the claimant's RFC, substantial evidence does not support that assessment. Lingenfelter v. Astrue, 504 F.3d 1028, 1040-41 (9th Cir. 2007). Plaintiff's motion for summary judgment on this issue is therefore also granted.

### E. Remand

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004). Reynolds argues, however, that the Court should credit Mr. Reynolds' testimony as true and remand this case for payment of benefits. ECF No. 44 at 21.

---

[4] Harmless error analysis applies in the social security context. Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015). However, the Ninth Circuit has held that "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" Brown-Hunter v. Colvin, 2015 WL 4620123, at *4 (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014)). "Because we cannot engage in such substitution or speculation, such error will never be harmless." Id.

11

The Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." Garrison, 759 F.3d at 1020.  This standard is met where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id.  But if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should remand for further proceedings "even though all conditions of the credit-as-true rule are satisfied." Id. at 1021; see also Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 ("a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony").

Here the Court need not determine whether the three preliminary requirements are met, because, even assuming that they are, the record as a whole creates serious doubt as to whether the claimant was disabled before November 15, 2009. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014).  Specifically, Dr. Scheidemann's 2009 report suggests that, by that date, Reynolds' conditions had gradually worsened to a point where he could no longer work, rather than that his symptoms on the alleged February 7, 2007 onset date were the same as his symptoms in 2009 or 2011.  AR 306.  In addition, Reynolds testified at the hearing that his conditions worsened in 2009.  AR 414 (stating that his heart issues "seemed to be okay" following his 2007 heart attack and that his lower back and hip first started to bother him in May or June of 2009); AR 422 (stating that he started having carpal tunnel problems around 2009).

Viewing the record as a whole, the Court concludes that the claimant may have been disabled before November 15, 2009, but the record also contains cause for serious doubt. Accordingly, the proper result is to remand to the ALJ for further proceedings on an open record. Burrell, 775 F.3d at 1141-42.

## CONCLUSION

For the foregoing reasons, Reynolds' motion for summary judgment is granted in part and

12

the Commissioner's motion for summary judgment is denied.  The action is hereby remanded to the ALJ for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: September 14, 2015

_____
JON S. TIGAR
United States District Judge